In re HERCULES ATKIN CO., Limited.

(District Court, E. D. Pennsylvania. December 17, 1904.)

No. 2,060.

1. BANKRUPTCY—COMPANIES SUBJECT TO ACT—LIMITED LIABILITY ASSOCIATIONS.

A mercantile association organized under Act Pa. 1874 (P. L. 271), providing for "the formation of partnership associations in which the capital subscribed shall alone be responsible for the debts of the association," is within the terms of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as amended (Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410]), and subject to be adjudged an involuntary bankrupt, whether regarded as an unincorporated company or a corporation.

2. SAME—DISSOLUTION OF ASSOCIATION—ELECTION OF LIQUIDATING TRUSTEES.

A mercantile association organized under Act Pa. 1874 (P. L. 271), does not cease to exist, so as to preclude bankruptcy proceedings against it, by its election of liquidating trustees as provided in the act, which further provides that, upon their giving notice by publication, "said association shall cease to carry on its business, except so far as may be required for the beneficial winding up thereof."

3. SAME—ACTS OF BANKRUPTCY—ELECTION OF LIQUIDATING TRUSTEES BY INSOLVENT COMPANY.

The provision of Bankr. Act July 1, 1898, c. 541, § 3a, subd. 4, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended (Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410]), making it an act of bankruptcy on the part of a debtor where "because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory or of the United States," does not mean exclusively that a trustee must have been put in charge by order of a court, but embraces as well a case where liquidating trustees have been elected by an insolvent company or corporation, as provided by the statute under which it is organized.

In Bankruptcy. On motion for adjudication on petition and answer.

George W. Carr and J. Siegmund Levin, for petitioners.

M. J. O'Callaghan, for alleged bankrupt.

J. B. McPHERSON, District Judge. The bankrupt is an association organized in September, 1893, under the Pennsylvania Act of 1874 (P. L. 271), and its supplements, and has been doing a mercantile business in the city of Philadelphia. On October 8, 1904, a majority of its members in number and value voted to dissolve the association, and elected three liquidating trustees, to whom the supplement of 1889 (P. L. 183) gave "full power to settle the affairs of the association and distribute the assets thereof after the payment of its debts among the members, under the direction of the court of common pleas of the proper county." On October 10th these trustees gave notice of the intended winding up of the association by publication in two newspapers of the city of Philadelphia, as required by section 8, p. 273, of the act of 1874,

¶ 1. What persons are subject to bankruptcy law, see note to Matoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

and thereupon the association ceased to carry on its business. The answer does not deny insolvency, but sets up two defenses: First, that such an association as this, formed under the Pennsylvania act of 1874, is not embraced by the bankrupt act, and is therefore not subject to adjudication; and, second, that when the liquidating trustees began to publish notice of the proposed winding up, the association ipso facto ceased to exist, and the title to its property passed to the trustees, an adjudication being thus precluded because the bankrupt is civilly dead and no longer amenable to process.

Not much time, I think, need be spent upon either defense. Section 4b of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], as amended in 1903 (Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410]), provides, inter alia, that "* * * any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits * * * may be adjudicated a voluntary bankrupt." If the Pennsylvania act of 1874 falls short of incorporating the bankrupt, the association must then necessarily be regarded as an unincorporated company, and therefore expressly within the terms of section 4b, above quoted; for the Supreme Court of Pennsylvania has authoritatively described the nature of joint-stock associations under the act of 1874 in numerous decisions, of which Hill v. Stetler, 127 Pa. 161, 17 Atl. 887, may stand as an example, and has declared them to be a cross between a partnership and a corporate body. In that case Mr. Justice Williams, speaking for the court, used this language:

"The persons composing a partnership may agree with each other to invest a certain fixed sum each in the common venture, and no more. Such an agreement may limit the interest of each in the property and profits of the firm, but it will not limit the liability of any for the firm debts. Each member will be liable individually for the entire indebtedness of the firm. The act of 1874 was passed to relieve against the risk and inconvenience attending general partnerships, by providing a mode by which individuals might invest a fixed sum in a business enterprise, without liability to loss beyond the sum so invested. The method provided is the creation of a new artificial person to be called a 'joint-stock association,' having some of the characteristics of a partnership and some of a corporation."

This seems to be conclusive concerning the character of the bankrupt, and to fix its status as an unincorporated partnership or company. But even if this be not true, it cannot be doubted, I think, that the bankrupt is a "corporation" within the definition of that word given in section 1, subd. "a," cl. 6, of the act of July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]:

"'Corporations' shall mean all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships, and shall include limited or other partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association."

This is precisely descriptive of an association under the Pennsylvania statute, for the title declares it to be "An act authorizing the formation of partnership associations, in which the capital sub-

scribed shall alone be responsible for the debts of the association, except under certain circumstances," and its first section provides the method by which such an association, thus privileged, may be organized. Clearly, therefore, as it seems to me, the Hercules Atkin Company, Limited, is within the scope of the bankrupt act, and the first defense must be overruled.

Neither is the second defense more effective. Section 8 of the Pennsylvania statute permits the dissolution of such associations:

"First. Whenever the period fixed for the duration of the association expires.

"Second. Whenever, by a vote of a majority in number and value of interest, it shall be so determined, and notice of such winding up shall be given by publication in two newspapers published in the proper city or county at least six consecutive times, and immediately upon the commencement of said advertising, said association shall cease to carry on its business, except so far as may be required for the beneficial winding up thereof."

Section 9, p. 273, provides for the election of three liquidating trustees, who are to have full power to wind up the association and distribute its assets, but the association does not disappear as soon as a vote to wind up has been passed. On the contrary, the statute distinctly recognizes that it continues to exist for certain purposes. No doubt it must cease doing business, but even this is a qualified prohibition, for section 8 immediately adds, "except so far as may be required for the beneficial winding up thereof." To hold that the association passed out of existence as soon as it appointed liquidating trustees and they began to advertise, would result in the anomalous situation that the commission of an act of bankruptcy would prevent the bankrupt act from taking effect; for it cannot be doubted, I think, that the appointment of liquidating trustees was an act of bankruptcy under clause 4 of section 3a, (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410]), which declares that such an act has been committed where, "because of insolvency, a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States." This does not mean exclusively that the trustee must have been put in charge by the order of a court, but embraces all other methods whereby the property of an insolvent is committed to a trustee for the creditors, under the laws of a state, of a territory, or of the United States, including such a method as was employed in the present case. The two important matters that were in the mind of Congress when the above amendment was adopted were the insolvency of the bankrupt, and the fact that his property had been put in charge of a trustee for the purpose of distribution among the creditors. The method by which the property is thus transferred to a trustee for purposes of distribution is immaterial, so long as such method has the sanction of the law. The association having committed an act of bankruptcy, therefore, became at once potentially subject to the federal jurisdiction, and could not escape it merely by ceasing to do business. The title to its property may have passed to the liquidating trustees, but it passed subject to be divested in favor

of the trustee in bankruptcy, if proceedings in the District Court should be afterwards begun and carried forward to adjudication.

The petitioners' right seems to be clear, and the clerk is therefore directed to enter the proper order of adjudication.